Everette Lee FRAZIER *v.* STATE of Arkansas

CR 94-995                                           915 S.W.2d 691

Supreme Court of Arkansas
Opinion delivered February 12, 1996

*Linda Scribner*, Benton County Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Everette Lee Frazier was charged with the capital murder of his estranged wife, Wynona, and attempted capital murder of Bobby Jones. Wynona and Jones were in Wynona's house sitting at the kitchen table in the early hours of October 18, 1992, when they heard a noise outside. While it was disputed at trial how Everette entered the house through a window, it is clear he and Jones scuffled, and during the following course of events, Wynona was shot to death, and Jones was shot in the arm and neck. Everette was convicted of capital murder and attempted first-degree murder and given respective consecutive sentences of life imprisonment without parole and thirty years imprisonment. Everette's points for reversal are that the trial judge erred (1) in admitting into evidence transcribed, pretrial statements Jones had given defense counsel and (2) in failing to grant Everette's motion for mistrial wherein he claimed the prosecutor's cross-examination of him at

trial violated his due process right by drawing attention to Everette's silence at the time of his arrest. We find no merit in these arguments.

Everette's first argument turns on Jones's statements given to officers when they investigated the shootings and his taped statements given to defense counsel several weeks before trial. At trial, the state called Jones as its witness, and Jones described that, on the morning of October 18, 1992, Everette broke a window with a two-by-four board, and bearing a pistol, he climbed through the window into the house, shot Jones twice, and after shoving Wynona into a chair, shot her in the face, killing her. Jones said that Everette came towards him again, and Jones kicked him in the head, after which Everette left the premises, got in his car and drove away.

Upon cross-examination, defense counsel attempted to attack Jones's credibility in numerous ways. First, defense counsel asked questions of Jones in an effort to show Jones had an ongoing affair with Wynona dating at least back to 1991 when Everette and Wynona were initially estranged and Everette had filed for divorce. Counsel further questioned Jones, suggesting that Jones had increased the amount of time he spent with Wynona in 1992 when Everette and Wynona were again estranged, but not divorced. Jones denied having any affair with Wynona and claimed he would not do so until she was divorced. He did admit that he went by her house once or twice during a week after he got off work at 4:00 a.m., but only went in when a light was on.

In continuing cross-examination, defense counsel utilized prior statements Jones had given to detectives and asked Jones to explain their inconsistencies with Jones's trial testimony. For example, counsel showed Jones gave earlier statements to detectives, reflecting that Jones was not sure what Everette used to break out the window, that he could not see anything when Everette gained access into the house and went over to Wynona, and that he could not remember if he told detectives that Everette pointed a gun.

In Everette's case-in-chief, counsel called Jones as a witness, and questioned him in an effort to show Jones was having an affair with Wynona and to show Jones's account of what

occurred on October 18, 1992 was conflicting and unclear. Counsel further questioned Jones's earlier testimony as the state's witness by again pointing out purported inconsistencies indicating Jones was uncertain as to how Everette gained entrance through the window, what kind and size of gun Everette possessed, how Wynona got in the chair in which she was shot, and whether he was sure Wynona was shot while sitting in the chair. Counsel attempted to question other details, but his foregoing questions are sufficient to show he thoroughly took issue with Jones's trial testimony by utilizing and seizing upon any inconsistency and failure in recollection that surfaced in Jones's story.

At the end of defense counsel's examination of Jones, the state proceeded in its questioning of him in an attempt to rehabilitate him. After briskly examining Jones over many of the points defense counsel covered on direct, the state offered to introduce the taped and transcribed statement that Jones had given defense counsel several weeks prior to trial. Defense counsel's objection to Jones's statement, the state's response and court's ruling were as follows:

> Defense counsel: Your Honor this is the State's way of getting around hearsay. This is not a sworn statement. It is used solely for impeachment purposes, and they are not to be considered as evidence.
>
> Court: And I can do that, give that instruction if you wish.
>
> Defense counsel: Your Honor, I object to the introduction of this.
>
> State: The State would say that this is not hearsay, A.R.E. 801(d)(1)(ii). This is a statement that is consistent with his testimony.
>
> Court: It seems like the issue is when they cross-examine someone over prior inconsistent statement, its got to be afforded to opposing counsel. State is introducing it as a prior statement of the Defendant, and they are entitled to. It may be admitted.

The trial court ruled correctly. It is settled law that a

prior statement by a witness testifying at a trial is *not hearsay* if it is consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. *Jones* v. *State*, 318 Ark. 704, 889 S.W.2d 706 (1994); *Cooper* v. *State*, 317 Ark. 485, 879 S.W.2d 405 (1994); *George* v. *State*, 270 Ark. 335, 604 S.W.2d 940 (1980); *see also* Ark. R. Evid. 801(d)(1)(ii). That is the situation here. Defense counsel made every attempt to show Jones's trial testimony was inconsistent with his earlier statements and fairness dictated that the prosecutor be allowed to explore this area of inquiry to clarify any confusion or misapprehension that may have lingered in the jury's mind from defense counsel's examination. *Cooper*, 317 Ark. at 489, 879 S.W.2d at 407.

■ Everette argues on appeal that the court erred by allowing the state to introduce the prior statement because unsworn out-of-court statements in criminal cases are excluded as substantive evidence. This argument is misplaced, as the statement introduced was not hearsay under Ark. R. Evid. 801(d)(1)(ii), and was not offered to prove the truth of the matter asserted, but to rebut an express or implied charge of recent fabrication. Although the prior statement could not have been introduced to prove the truth of the matter asserted, when evidence is admissible for one purpose but not admissible for another purpose, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. Ark. R. Evid. 105. Because the statement was admitted for a proper purpose, and the court offered to give a limiting instruction, Everette may not now complain that the statement was used by the state substantively when Everette neither asked the court for a limiting instruction nor accepted the court's offer to give one. *See Lindsey* v. *State*, 319 Ark. 132, 890 S.W.2d 584 (1994); *see also Bliss* v. *State*, 288 Ark. 546, 708 S.W.2d 74 (1986).

■ Before leaving this point, we note that Everette's argument on appeal complains that, besides Jones's prior consistent statements, his entire statement given to defense counsel contained other inadmissible remarks which should have been excluded. However, even if this was true, Everette never raised this issue at trial, nor did he point out to the trial judge those purported offensive portions he now argues on appeal. Without making such a request below, Everette cannot argue on appeal

that the judge erred by failing to separate inadmissible portions of the transcribed statement from the admissible portions. *Vasquez* v. *State*, 287 Ark. 468, 701 S.W.2d 357 (1985).

Everette Frazier's second point asserts the trial court erred in not declaring a mistrial when the state cross-examined him at trial about his having invoked his right to remain silent when questioned by Detective Donald R. Batchelder the day of his wife's shooting. The prosecutor's examination of Everette follows:

> Prosecuting attorney: You recall talking to Detective Batchelder back on October 18th, don't you?
>
> Frazier: Yes, sir.
>
> Prosecuting attorney: And you heard his testimony about your conversation, didn't you?
>
> Frazier: Yes, sir.
>
> Prosecuting attorney: And he asked you if you had been over to the residence that night, didn't he?
>
> Frazier: I believe so.
>
> Prosecuting attorney: And you denied it twice; did you not?
>
> Frazier: Yep.
>
> Prosecuting attorney: And that was a lie, wasn't it?
>
> Frazier: I merely told him I hadn't been there.
>
> Prosecuting attorney: And that was a lie, wasn't it?
>
> Frazier: Whenever I was there, the shooting went on, I didn't know nobody was shot. If I had known just one of them had been shot, I would have got them medical attention right then. If I would have had to have, I would have took them to the hospital myself.
>
> Prosecuting attorney: Mr. Frazier —
>
> Frazier: I didn't — I told him I hadn't —
>
> Prosecuting attorney: — do you deny —

Frazier: — been there because I didn't want to talk about it. I couldn't talk about it.

Prosecuting attorney: It was a lie, wasn't it?

Frazier: I answered your question.

Prosecuting attorney: Mr. Frazier, it was a lie, wasn't it?

Frazier: I said — I said that it was.

Prosecuting attorney: Did Detective Batchelder give you every opportunity to tell your side of the story?

Frazier: Not actually. He just sat down and started asking my questions.

Prosecuting attorney: Did he give you every opportunity?

Frazier: I don't know what you mean by every opportunity.

Prosecuting attorney: Did he cut you off?

Frazier: After I told him I wanted to see my lawyer.

Following the above colloquy, defense counsel moved for a mistrial, arguing the prosecutor's questioning violated the principle in *Doyle* v. *Ohio*, 426 U.S. 610 (1976), where the Court held that the use for impeachment purposes of a person's silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment.

■ The short answer to Everette Frazier's argument is that while *Doyle* bars the use against a criminal defendant of silence mentioned after receipt of governmental assurances, *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. *Anderson* v. *Charles*, 447 U.S. 404 (1980). Questions which are not designed to draw meaning from silence, but are meant to elicit an explanation for a prior inconsistent statement are not contrary to the law in *Doyle*. *Id*. at 409. Here, the prosecutor's question, "Did he [Detective Batchelder] cut you off?", was asked for the purpose of helping Everette understand the prosecutor's earlier question concerning whether the detective had given Everette every opportunity to explain his

side of the story. Accordingly, we uphold the trial court's denial of Everette's mistrial motion.

The record in this case has been reviewed pursuant to Ark. Sup. Ct. R. 4-3(h) for errors prejudicial to Frazier that would warrant a reversal. No such errors have been found.

Affirmed.

DUDLEY J., dissents.

ROBERT H. DUDLEY, Justice, dissenting. The majority opinion may well necessitate a change in the way attorneys prepare for trial in both civil and criminal cases. In order to make the holding of the majority opinion and this dissent as clear as possible, this dissent is divided into parts.

## I. FACTS

### A.

On October 18, 1992, the Bentonville Police Department received a call reporting that a woman had been shot. Police were dispatched to the scene where they found Bobby Jones and the corpse of Wynona Frazier. Jones told the police that he was in Wynona Frazier's home when he heard defendant, who was Wynona Frazier's estranged husband, break through a window. He said defendant, after breaking in, shot him twice, and then shot and killed Wynona Frazier, and fled in his vehicle. Defendant was subsequently charged with the attempted capital murder of Bobby Jones and the capital murder of Wynona Frazier. The charges were joined.

### B.

Over two years later, on January 7, 1994, in preparation for the trial, defendant's attorneys interviewed Bobby Jones, who was the only eyewitness to the crimes. As would be expected, they asked numerous questions trying to learn all they could about the State's primary witness. Their recorded interview was solely for their own benefit. It was not given under oath. They began the interview by asking Jones where he was born, where he grew up, where he lived, how he met the defendant, whether he was married, whether he was divorced, what caused his divorce, whether he had children, whether he had an affair with

Wynona, what he knew about the married life of defendant and Wynona, why Wynona filed for divorce against defendant, whether defendant paid child support to Wynona, how defendant treated Wynona, and how the crimes took place.

Since the interview was solely for defense counsel's benefit, they likely did not consider the possibility that a trial court might order a full transcription of the interview admitted into evidence; therefore, they asked questions they would not otherwise have asked, such as whether defendant paid child support while separated from Wynona, whether Wynona was afraid of the defendant, and whether she was afraid he was going to kill her. One answer even revealed that defendant had refused to attend his grandchild's birthday party. The interview was extensive. It contained fifty-three pages when transcribed in the lawyer's office.

In one answer Jones told defense counsel that defendant had asked him if he and Wynona were having an affair. In another he said that, on the night of the shooting, he arrived at Wynona's house around 9:00 or 10:00. In yet another answer he said that the defendant broke the window with "some kind of board," but he wasn't sure what kind.

### C.

At trial, in the State's case-in-chief, Jones testified that the defendant told him in October of 1992 that Wynona had said he was making "obscene eyes" at her. He said that he arrived at the house around 9:30 or 10:00 on the night of the shooting. He said that he heard a noise and then "seen a two-by-four knocking out the window."

On cross-examination, defendant's attorney asked Jones if he told the prosecutor that he had made sexual advances toward Wynona and whether he told one policeman that he arrived at Wynona's house at 6:00 or 6:30, and told another that he got there at 8:00 or 9:00. He was asked whether he told one policeman that appellant broke the window with a "wooden stick" and told another that he did not know what type of object was used to break the window.

In the defendant's case, defense counsel began direct examination by asking Jones if he remembered the January 7 inter-

view with the defense attorneys. Then Jones was asked if he knew that defendant had accused Wynona and him of having an affair in 1992. He said that he did not remember such an incident. He subsequently testified that, in the two weeks before the alleged crimes, he had not been to Wynona's house very often. He was then asked whether he had told the police that he had stopped at Wynona's every day at 4:00 a.m. after he got off work, and that he had done that every day for the two weeks before the crimes. Again, he said that he did not remember. When asked about the murder weapon, he said that he did not know how large the gun was or what it looked like, and defense counsel then asked if he remembered telling police that the gun was "little bitty" and that it had a brown handle and a blackish-brown barrel. The examination brought out inconsistencies regarding where Jones had said Wynona was before the shooting, and revealed that he told police he was not really clear on a lot of the details.

On cross-examination, the prosecutor asked Jones if he had told the truth in the January 7, 1994, statement taken by the defense attorneys, and if he had said the same things to defense counsel that he had said to police. The State then moved to introduce the fifty-three page transcription of defense counsel's interview. Appellant made an extensive objection based on hearsay. The State countered that it was offering the complete transcript of the interview by defense counsel to rebut the insinuation of a recent fabrication. The court admitted the fifty-three page transcription under Ark. R. Evid. 801(d)(1)(ii). Defendant appeals. The majority opinion holds that the transcription of defense counsel's unsworn interview with the witness was properly admitted as evidence. I dissent.

## II. LAW

### B.

Rule 801 of the Arkansas Rules of Evidence provides that "A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is . . . consistent with his testimony *and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.*" Ark. R. Evid. 801(d)(1)(ii) (emphasis added). The the-

ory underlying the rule is that evidence which counteracts a suggestion that the witness has changed his story in response to a motive for fabrication, by showing the response was the same prior to external pressure being applied, is highly relevant in shedding light on the witness's credibility at trial. *Pennington* v. *State*, 24 Ark. App. 70, 749 S.W.2d 680 (1988). Examples of the correct application of the rule can be found in the following federal cases. In *United States* v. *Gonzalez*, 700 F.2d 196 (5th Cir. 1983), the court held that the defendant should have been allowed to introduce evidence of his prior consistent statement to his wife where there was implication that he had fabricated lack of criminal intent. In *United States* v. *Fieldman*, 711 F.2d 758 (6th Cir. 1983), the court affirmed a ruling admitting the prior consistent statement of a government witness where defense counsel, during cross-examination and opening and closing argument, impliedly charged that a government "deal" motivated the witness to fabricate his trial testimony and that the prior statement was made before the witness entered into a plea agreement with the government. Finally, in *United States* v. *Albert*, 595 F.2d 283 (5th Cir. 1979), *cert. denied*, 444 U.S. 963 (1979), the court held that it was not error to admit into evidence a tape recording between the witness and a drug dealer, portions of which corroborated the witness's testimony, where on cross-examination defense counsel brought out that the witness had not agreed to testify until an arrangement had been reached about a disposition of the charges against defendant. *See* 4 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence*, ¶ 801(d)(1)(B)[01] (1995).

Here, there was no showing of a motive to fabricate testimony which arose between the interview with defendant's attorneys and the testimony at trial. The witness was not charged with a crime, there was no attempt at a "deal," and there was no threat of him being charged. There was no attempt to work out anything with anybody on the part of the witness. The majority opinion does not suggest even a remote possibility of a motive to fabricate that could have arisen between defense counsel's interview and the trial. Such a showing, either express or implied, is essential under the clear language of the Rule. *Jones* v. *State*, 318 Ark. 704, 889 S.W.2d 706 (1994); *Rock* v. *State*, 288 Ark. 566, 708 S.W.2d 78 (1986).

Evidence of prior consistent statements cannot be used to bolster credibility unless they come within the requirements of Ark. R. Evid. 801(d)(1)(ii) or (iii). *Todd* v. *State*, 283 Ark. 492, 678 S.W.2d 345 (1984); *Pennington* v. *State*, 24 Ark. App. at 72, 749 S.W.2d at 681. A prior consistent statement may not be introduced simply to bolster the testimony of a witness at trial. *Pennington* v. *State*, 24 Ark. App. at 72, 749 S.W.2d at 681 (quoting Weinstein, *supra* ¶ 801(d)(1)(B)[01] (1987)). Thus, the ruling admitting the interview was in error.

Even if some part of the interview had been admissible within the purview of Ark. Rule Evid. 801 (d)(1)(ii), it was admissible only to the extent that it related to the same subject matter. The rest of it was hearsay and not admissible. *United States* v. *Dennis*, 625 F.2d 782 (8th Cir. 1980).

### B.

The majority opinion is far reaching. Since Rule 801 applies to all trials, it will apply to all future trials, both civil and criminal. The majority opinion holds that prior consistent statements, without more, are admissible to bolster a witness's testimony. No other jurisdiction so construes Uniform Rule 801(d)(1)(ii). The result may well be that, in this jurisdiction, an attorney can no longer take complete statements of witnesses because such an interview can now be used by opposing counsel to bolster the opposing party's testimony.