**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2709

_____

Wilburn L. Henderson,  *
                        *
      Appellant,  *
                        *  Appeal from the United States
    v.                  *  District Court for the
                        *  Eastern District of Arkansas.
Larry Norris, Director,  *
Arkansas Department of Correction,  *
                        *
      Appellee.  *
                        *

_____

Submitted: April 16, 1997
Filed: July 9, 1997

_____

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge and BEAM,
    Circuit Judge.

_____

BEAM, Circuit Judge.

    Wilburn Henderson appeals the district court's[1] denial of his petition for a writ of habeas corpus.  We affirm.

_____

[1]The Honorable William R. Wilson, United States District Court Judge for the Eastern District of Arkansas.

## I.  BACKGROUND

Three times Wilburn Henderson has been tried for the murder of Willa Dean O'Neal and three times he has been convicted and sentenced to death. The first conviction was voided as a result of juror exposure to pretrial publicity.  The second conviction was invalidated when this court affirmed the district court's grant of habeas corpus relief.  Henderson v. Sargent, 926 F.2d 706 (8th Cir. 1991), modified, 939 F.2d 586 (8th Cir. 1991).  The third conviction is the subject of this appeal.

In November 1980, Ms. O'Neal was found shot to death behind the counter of the family furniture store in Fort Smith, Arkansas.  She was murdered between approximately 1:40 and 2:00 p.m.  The cash register was found open and empty.  Suspicion fell on Henderson when a folded sheet of yellow paper with two telephone numbers, the name of a real estate agent, and a description of a lake cabin was found on the floor.  Police contacted the real estate agent who explained that Henderson had failed to keep an appointment to discuss the cabin.  Further investigation revealed that Henderson had taken a .22 caliber pistol out of pawn a few days before the murder, and had returned it after the murder.  Ballistic testing showed that Ms. O'Neal was killed by a .22 caliber pistol, but could not conclusively match the bullet to Henderson's gun.  Aware he was a suspect, Henderson fled to Houston where he was later arrested despite attempts to alter his appearance.  Arkansas police questioned Henderson in Houston. Henderson admitted that he was at the murder scene but claimed he had only witnessed the murder.  He later recanted the statement, claiming it was involuntary.

At his first two trials, Henderson's defense was that he had been in Springdale, Arkansas, at 12:00 noon the day of the murder and could not possibly have driven to

Fort Smith in time to commit the crime. Both juries convicted Henderson of capital murder.

After his second conviction, Henderson filed a section 2254 petition contending that his trial counsel had failed to investigate and present evidence implicating the victim's husband, Bob O'Neal, as the killer. That evidence included Bob O'Neal's history of violence and marital infidelity, Willa O'Neal's desire for a divorce, and Bob O'Neal's suspicious behavior on the day of the murder. For example, on this particular day, contrary to usual routine, Mr. O'Neal insisted that his daughter Glenda work with him rather than with her mother at the store. They returned to the store around noon that day, and left at about 1:40 p.m. As they were leaving, Mr. O'Neal told Glenda and her husband to stay in the truck while he went back into the store for a few minutes. The three then left, but as soon as they reached their destination, Mr. O'Neal sent Glenda back to the store, first to get soda and then (when she bought the drink elsewhere) to get electrical tape. Glenda returned to the store and discovered her mother's body. When Glenda arrived with the police, Mr. O'Neal exclaimed without being told what happened: "Someone has robbed and killed my--murdered my wife!"

The district court held an extensive evidentiary hearing, which included the testimony of Clarence Wilson, a part-time employee of the O'Neals. The court then issued a writ of habeas corpus. We affirmed, finding that Henderson's counsel had been constitutionally defective in the second trial by failing to develop this evidence and bring it before the jury. Henderson v. Sargent, 926 F.2d at 712.

Henderson was assigned new counsel and was tried again. This time, the defense further explored the evidence implicating Mr. O'Neal, including all of the facts recited above. After the defense's presentation, the government called Wilson as a rebuttal witness. Wilson testified that he checked with Ms. O'Neal between 10:00 and 11:00 a.m. on the day of the murder, to see if she had work for him. He further testified that he returned to the store around 1:00 p.m. and that Ms. O'Neal told him that

her family had stopped for lunch but had left.  Wilson testified he then left the store and did not return until after the murder.

Wilson's testimony that he had seen Ms. O'Neal alive after her husband left the store essentially eviscerated defense contentions that Mr. O'Neal was the killer.  On cross-examination, defense counsel asked why Wilson had only mentioned being at the store twice and not three times at the habeas hearing two years before.  Wilson responded that it must have "slipped [his] mind."  Trial Tr. at 1565.  On redirect examination, the state referred to a statement Wilson made to police shortly after the murder, that detailed all three trips to the store.  Over defense objection, the trial court received the evidence.  The jury convicted Henderson again.

After exhausting his state remedies, see Henderson v. Arkansas, 844 S.W.2d 360 (Ark. 1993) and Henderson v. Arkansas, No. CR 93-849, 1994 WL 91313 (Ark. Mar. 14, 1994), Henderson filed this section 2254 petition. The district court denied relief; Henderson appeals.

## II.    DISCUSSION

### A.    Wilson's Testimony

Henderson argues that Wilson's testimony denied him due process and rendered his third trial fundamentally unfair, meriting habeas corpus relief.  Specifically, Henderson complains that the trial court: (1) improperly allowed the state to present Wilson's testimony in rebuttal; and (2) erred in allowing reference to Wilson's police statement.

On habeas review, evidentiary errors are only relevant to the extent that the presentation or admission of particular proof infringed on "a specific constitutional protection or was so prejudicial as to deny due process."  Hobbs v. Lockhart, 791 F.2d

-4-

125, 127 (8th Cir. 1986) (quotation omitted).  Only evidentiary errors that are so grossly prejudicial that they fatally infect the entire trial, preventing it from being fundamentally fair, will justify habeas corpus relief.  Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990).  To make this determination, we "review the totality of the facts in the case and analyze the fairness of the particular trial under consideration."  Hobbs, 791 F.2d  at 128.

Henderson alleges that he was denied a fair trial and due process when the state presented Wilson's testimony in rebuttal rather than in its case-in-chief.  We agree with the district court that the timing of Wilson's testimony at trial was not fundamentally unfair.  Under Arkansas procedural rules, the only significant difference between testimony in the state's case-in-chief and rebuttal is that rebuttal witnesses need not be disclosed to the defense prior to trial.  Ark. R. Crim. P. 17.1(a)(i).  The Arkansas courts have reversed convictions procured with testimony by witnesses about which the defense was not notified on the grounds that they were not true rebuttal witnesses.  E.g., Birchett v. Arkansas, 708 S.W.2d 625, 626 (Ark. 1986).  However, here, Wilson's identity was hardly unknown to the defense.  Not only had Wilson testified at Henderson's first habeas corpus hearing, he had been subpoenaed by the defense for the third  trial.  Henderson was not subject to unfair surprise by the state's presentation of Wilson in rebuttal, and was therefore not denied due process by the timing of his testimony.

Likewise, we see no fundamental unfairness in the prosecution's reference on redirect to Wilson's police statement.  The trial court overruled defense objections to the questions and allowed the testimony as evidence of a prior consistent statement.  Ark. R. E.  801(d)(1)(ii).  Henderson asserts that the trial court erred in its interpretation of state evidentiary rules, and claims the error was of constitutional magnitude.  He characterizes counsel's cross-examination as merely an attack on Wilson's memory, and argues that a prior consistent statement can only be admitted when a witness has been attacked as having a motive to lie.

As an initial matter, Henderson has not even established that state evidentiary rules proscribed reference to Wilson's statement.  The Arkansas Supreme Court has held that attacking the accuracy, even without impugning the integrity, of a witness's testimony, allows admission of a prior consistent statement under 801(d)(1)(ii).  <u>Frazier v. Arkansas</u>, 915 S.W.2d 691, 693 (Ark. 1996).

More fundamentally, Henderson's assertion amounts to nothing more than reargument of the state law question he presented to the Arkansas Supreme Court.   These positions were rejected twice by that court. Henderson has not made any additional showing that the introduction of this evidence violated his constitutional rights or was flagrantly unjust.  We fail to see how the reference to Wilson's statement was fundamentally unfair, as the Federal Rules of Evidence provide for its admission.  <u>See</u> <u>United States v. Coleman</u>, 631 F.2d 908, 914 (D.C. Cir. 1980) ("Even where the suggestion of contradiction is only imputation of an inaccurate memory, a prior consistent statement is admissible to rebut the inference." )(citing cases).   Henderson makes no claim that Wilson's police statement, made shortly after the murder, was false or in any way unreliable. Reference to the statement did not constitute grossly unfair prejudice in this case.  The district court correctly withheld habeas relief on these claims.

## B.    Ineffective Assistance of Counsel

Henderson complains that his trial counsel was ineffective in cross-examining Wilson and in failing to offer the transcript of Wilson's habeas corpus testimony into evidence.   To prevail on an ineffective assistance of counsel claim, Henderson must show that his attorney's performance fell below professional standards of competence and that the deficient performance prejudiced his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  We presume attorneys provide effective assistance and will not second-guess strategic decisions or exploit the benefits of hindsight.  <u>Payne v. United States</u>, 78 F.3d 343, 345 (8th Cir. 1996).

We first address Henderson's claim that counsel was ineffective for failing to adequately cross-examine Wilson. Henderson does not specify how counsel should have proceeded, simply describing counsel's performance as "lame." Appellant's Brief at 23. This is not the type of error, if indeed it was error at all, that the Sixth Amendment functions to correct. The cross-examination of a witness is a delicate task; what works for one lawyer may not be successful for another. Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel. Barnes v. United States, 859 F.2d 607, 608 (8th Cir. 1988). We have recently observed that "there are a few, if any, cross-examinations that could not be improved upon. If that were the standard of constitutional effectiveness, few would be the counsel whose performance would past muster. " Willis v. United States, 87 F.3d 1004, 1006 (8th Cir. 1996). A careful review of the transcript convinces us that counsel's cross-examination was not constitutionally infirm.

Henderson also claims that counsel's failure to introduce a transcript of Wilson's habeas corpus testimony constituted ineffective assistance. Henderson argues that the habeas transcript was "substantive evidence that Wilson's testimony was incorrect [and] served to exculpate Henderson." Appellant's Br. at 27. We disagree. First, Henderson has provided no reason, at trial or in any subsequent proceeding, to think that Wilson's statement made the day of the murder is less accurate than his testimony at the first habeas hearing, ten years after the fact. Furthermore, Wilson's prior testimony could not have been properly admitted as substantive evidence under state rules of evidence. Henderson v. Arkansas, No. CR 93-849, 1994 WL 91313 at *2 (Ark. Mar. 14, 1994) (explaining why transcript was inadmissible under state law). Finally, even had the habeas testimony been admissible, we fail to see how Henderson was prejudiced by its absence. The jury was informed, through cross-examination, of the contradiction between Wilson's habeas and trial testimony. They were free to discredit Wilson based on this inconsistency. Counsel's failure to proffer evidence that was both inadmissible and cumulative does not constitute ineffective assistance. The district court correctly withheld habeas relief on this claim.

## C.    Henderson's Statement

Henderson next contends that the trial court violated the Constitution by admitting his police statement into evidence.  Although a confession's voluntariness is a question of law, state court factual findings about the circumstances surrounding a confession are presumed to be correct.  <u>Miller v. Fenton</u>, 474 U.S. 104, 117 (1985).[2]

On direct appeal, the Arkansas Supreme Court found that Henderson had only been in custody for two days; was informed of and appeared to understand his rights; willingly spoke with Arkansas police; had a normal level of intelligence; and gave no indication of psychosis during his interrogation.  <u>Henderson v. Arkansas</u>, 844 S.W.2d at 362.  In light of these undisputed factual determinations, Henderson's challenge to the state court's legal conclusions must fail.

Henderson alleges that his statements to police were not voluntary because of his "schizophrenic reaction, schizo affective type with paranoid trends."  Appellant's Br. at 29.  However, he makes no allegation of coercive police conduct, a necessary prerequisite to the conclusion that a confession was involuntary.  <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986).  We have interpreted <u>Connelly</u> to mean that the "personal characteristics of the defendant are constitutionally irrelevant absent proof of coercion brought to bear on the defendant by the State. "  <u>United States v. Rohrbach</u>, 813 F.2d 142, 144 (8th Cir. 1987) (quotation omitted).  Because Henderson has failed to prove, or even allege, that the police officers' conduct was coercive, we reject his

---

[2]Although the standard by which federal courts review state court determinations of law was changed by the Anti-terrorism and Effective Death Penalty Act of 1996, the United States Supreme Court has held that those changes are not applicable to cases which, like this one, were pending at the time the AEDPA was enacted.  <u>Lindh v. Murphy</u>, 65 U.S.L.W. 4557 (U.S. June 23, 1997) (No. 96-6298).

argument that his incriminating statements were involuntary.  The district court correctly withheld habeas relief on this issue.

### D.    Cumulative Error

Henderson's final contention is that all of his other allegations of error combine to constitute cumulative error warranting section 2254 relief.  As Henderson himself acknowledges, "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own." Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990).   The district court correctly withheld habeas relief on this issue.

## III.  CONCLUSION

For the foregoing reasons, the district court's denial of Henderson's petition for a writ of habeas corpus is affirmed.

Judge Henley concurs in the result.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.