Prentis Lee WINKLE *v.* STATE of Arkansas

CR 07-775                                                    286 S.W.3d 147

Supreme Court of Arkansas
Opinion delivered June 26, 2008

*John Wesley Hall*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Farhan Khan*, Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice. Appellant Prentis Lee Winkle appeals from his conviction for rape and his sentence to 120

months' imprisonment. Winkle presents three arguments on appeal: (1) the circuit court erred in admitting into evidence the investigative notes of F.B.I. agent Jon Brody; (2) the circuit court erred in admitting into evidence a prior statement of a witness; and (3) the circuit court erred in admitting into evidence a prior recorded conversation between a witness and the victim in this case. We affirm the judgment and conviction.

On May 19, 2004, Winkle was charged with engaging in sexual intercourse with a person under the age of fourteen on or about July 1 and July 2, 2003, in Miller County, Arkansas. The information alleged that Winkle engaged in sexual intercourse or deviate sexual activity with an individual less than fourteen years of age. Winkle responded by filing a motion to dismiss the charges, in which he contended that the rape prosecution was barred by application of the Double Jeopardy Clause. The Miller County Circuit Court denied Winkle's motion, and this court affirmed that denial. *See Winkle v. State*, 366 Ark. 318, 235 S.W.3d 482 (2006).

Winkle went to trial on the State's charges on May 14, 2007, and the record reveals the following. The victim, M.S., met Winkle while she was living near Mt. Pleasant, Texas, with her mother, Brandi Stanley, and Ms. Stanley's boyfriend. Winkle had been a friend of Ms. Stanley's boyfriend and moved into a one-room cabin behind their home in May of 2003. Winkle's girlfriend, Tammy Foreman, also moved into the cabin. M.S. was thirteen at that time. M.S. was allowed to go on a couple of business trips with Winkle to look at equipment for his grave-digging business. Ms. Stanley testified that M.S. was first allowed to go on a business trip with Winkle because one day M.S. had not wanted to stay at her grandmother's house and Winkle offered to take her with him. Ms. Stanley further testified that she allowed M.S. to go on subsequent trips with Winkle because M.S. wanted to go, she thought it made M.S. feel important, and she and her boyfriend trusted Winkle.

The first trip M.S. took with Winkle was to Texarkana. They stayed overnight at his home near Texarkana in Ashdown, Arkansas. M.S. testified that during that trip, Winkle gave her Smirnoff alcohol and some sort of pill. She stated after awhile she could not move and Winkle started touching her, removing her pants, her underwear, and part of her shirt. When she woke up, she was naked. M.S. testified that Winkle threatened her not to tell anyone and "treated [her] like [she] should be more mature."

Winkle bought her clothing, gave her things, and let her answer his phone like she was an assistant to him.

M.S. made a second trip with Winkle to Dallas, Texas. M.S. could not recall exactly what happened on that trip other than they had eaten out at a steak restaurant, gone back to the hotel, and had sex. She only had flashes of having sex with Winkle, but woke up naked. M.S. also recalled another trip to Winkle's home in Ashdown, Arkansas, in which she had alcohol and drugs and engaged in sexual intercourse with Winkle.

In July of 2003, M.S. ran away from home because she got into an argument with her mother's boyfriend and she wanted to go visit a friend named Megan, whom she had met over the internet. She called Winkle to come pick her up. M.S. testified that Winkle took her to Texarkana, bought her some items that she needed at Wal-Mart, and took her to a truck stop. M.S. stated that they took a cab from the truck stop to a motel, where he then asked her to take a shower with him. She testified that she did not drink alcohol but had taken the same type of pill she had previously taken and felt like she "always did" and could not move. M.S. remembered the lights going off and Winkle having sexual contact with her, both oral and intercourse. The next morning, M.S. testified she was picked up by a cab and Winkle gave her $300. Eventually, the police tracked her down after she had called her mom from Birmingham, Alabama. M.S. later told Ms. Stanley things that had happened between her and Winkle.

Ms. Stanley contacted F.B.I. Special Agent Jon Brody, and Brody began an investigation by speaking with M.S. After two interviews with M.S., Agent Brody felt he had enough information to determine that a sexual relationship existed between M.S. and Winkle. Agent Brody, along with Agent Malloy, also interviewed Winkle. It was their testimony that Winkle first admitted only to the several trips and the time he spent with M.S., but not the sexual conduct. Cab records and hotel records confirmed certain admissions by Winkle and statements made by M.S. to Agent Brody. Agent Brody testified that eventually Winkle made a confession that he had sexual intercourse with M.S. seven times — four times at his home in Ashdown, Arkansas, twice in Dallas, Texas, and once at the Economy Inn in Miller County.

Winkle was convicted by a jury of his peers in the Miller County Circuit Court. He filed a timely notice of appeal on June 15, 2007. We now turn to the instant appeal.

For his first point on appeal, Winkle argues that the circuit court erred in allowing the State to introduce notes and a summary report written by F.B.I. Special Agent Jon Brody into evidence during redirect examination because the documents were hearsay. The State first argues that Winkle did not preserve this point for appeal and, alternatively, that the admission of the documents was necessary to clarify matters that Winkle initiated on cross-examination. Should this court reach this point on appeal, the State further contends that the circuit court did not abuse its discretion in admitting this evidence into the record. We hold the hearsay argument is not preserved for our review.

During trial, Agent Brody testified as to his interview with Winkle, during which Winkle admitted to raping M.S. Agent Brody took handwritten notes during the course of his interview with Winkle and, after the interview, used his notes and his memory to create a summary report called a "302." On cross-examination, Agent Brody was questioned about his notes, how his notes compared to his 302 summary report, if his report was "embellished" in comparison to his notes, and the length of the interview in comparison to when Winkle made his confession. In response, the State offered the documents into evidence and asked Agent Brody specific questions about what information those documents contained and what significance they had in relation to the interview. Defense counsel objected to the admission of these documents on the grounds that they were prejudicial and the State should have been able to correct anything initiated in cross-examination by simply asking the proper questions on redirect. Defense counsel did not object to the documents as hearsay, nor did the circuit court rule on hearsay. The circuit court ruled only that the documents were proper for rebuttal purposes and that they were more probative than prejudicial, especially considering that the State had agreed to redact the documents as requested.

This court has specifically held that "in order to preserve a hearsay objection, a defendant must make a timely, specific objection, stating that ground," as a general objection is not sufficient to preserve a specific point. *See Stone v. State*, 371 Ark. 78, 82, 263 S.W.3d 553, 555 (2007) (quoting *Howard v. State*, 348 Ark. 471, 493, 79 S.W.3d 273, 286 (2002)). Because defense counsel never specifically objected on hearsay grounds, Winkle's hearsay argument is not preserved for review. *See id.*

Winkle further argues that the circuit court erred by admitting a transcript of the victim's testimony from Winkle's federal

trial into the record. He argues that because the statement was not a prior inconsistent statement used to impeach the witness, it was improper for the circuit court to admit it into the record. The State avers that the prior testimony was admissible pursuant to Arkansas Rule of Evidence 801(d)(1)(ii) as a prior consistent statement offered to rebut a charge of fabrication. We agree with the State.

This court has held that circuit courts are afforded wide discretion in evidentiary rulings. *See Moore v. State*, 372 Ark. 579, 279 S.W.3d 69 (2008). We will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion, and, likewise, we will not reverse absent a showing of prejudice. *See id.*

Part of the evidence presented against Winkle was the testimony of M.S. She testified that, at age thirteen, Winkle had sexual intercourse with her on numerous occasions. At some point after her interview with Agent Brody, M.S. had written a note recanting her statements about the sexual encounters with Winkle. However, it was her testimony that the note was false and that she wrote it at the direction of Tammy Foreman, Winkle's girlfriend. M.S. testified, "I felt sorry for [Tammy]. I loved [Tammy], and I wanted to do everything I could, so I felt like if I didn't say anything, or anything else and I kept to myself, everything would be fine."

On cross-examination, defense counsel questioned M.S. multiple times trying to imply that in her testimony at the federal trial, she had testified that the note was true. The questions and answers between M.S. and defense counsel became confusing as to the subject of the question, and M.S. stated multiple times that she didn't understand the question but that the note she wrote was false. It is clear from the record that defense counsel was implying that her prior testimony at Winkle's federal trial had been inconsistent with the testimony she was providing at this trial.

Defense counsel had used the transcript of M.S.'s testimony from the federal trial during the cross-examination of M.S. On redirect examination, the State requested that the prior testimony be admitted into evidence to prove that her current testimony was consistent with her prior testimony that the note she wrote was not true. The circuit court admitted the prior testimony over Winkle's objection.

It is well settled that a prior statement by a witness testifying at a trial is not hearsay if it is consistent with his testimony and is offered to rebut an express or implied charge against him of

recent fabrication or improper influence or motive. *See Frazier v. State*, 323 Ark. 350, 915 S.W.2d 691 (1996); *Jones v. State*, 318 Ark. 704, 889 S.W.2d 706 (1994); *Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994); *George v. State*, 270 Ark. 335, 604 S.W.2d 940 (1980). *See also* Ark. R. Evid. 801(d)(1)(ii) (2007). Here, defense counsel repeatedly attempted to show M.S.'s trial testimony was inconsistent with her earlier statements given during Winkle's federal trial. We have repeatedly held that, in this situation, fairness dictates that the State be allowed to explore this area of inquiry and have the opportunity to clarify any confusion or misapprehension that may have lingered in the jury's mind from defense counsel's examination. *See, e.g., Harris v. State*, 339 Ark. 35, 2 S.W.3d 768 (1999). *See also Frazier*, 323 Ark. at 354, 915 S.W.2d at 693; *Cooper*, 317 Ark. at 489, 879 S.W.2d at 407. Therefore, we cannot say the circuit court abused its discretion in admitting the prior testimony.

For his final point on appeal, Winkle argues that a recorded phone call between his ex-wife, Jamie Kay Winkle, and M.S. was improperly admitted into the record by the circuit court. The State argues that the recording was permissible to impeach Jamie Kay's inconsistent testimony. Again, we review this issue under an abuse-of-discretion standard. *See Moore v. State, supra.*

Jamie Kay Winkle testified for the defense and, among other things, stated that M.S. had apologized to her during telephone conversations for making false allegations against Winkle. On cross-examination, Jamie Kay testified that she did not remember making a phone call to M.S. in which she told her that she supported Winkle's prosecution and gave M.S. specific examples of how Winkle was a dangerous person. Therefore, outside the presence of the jury, a tape recording of that conversation was played for her to refresh her memory. After listening to the tape, Jamie Kay admitted to having the conversation, but claimed she had been lying during that phone conversation. The State finished questioning Jamie Kay and did not move to admit the recording into evidence. However, on redirect examination, Jamie Kay then testified that she never believed the charges were true because she knows Winkle is "not that way." The State then moved to introduce the recorded phone conversation into evidence, and the circuit court granted the request over Winkle's objection.

Rule 613 of the Arkansas Rules of Evidence permits extrinsic evidence of prior inconsistent statements of a witness for the purpose of impeachment if the witness is afforded the opportunity

to explain or deny the statement, does not admit having made it, and the other party is afforded the opportunity to interrogate the witness on that statement. *See Threadgill v. State*, 347 Ark. 986, 69 S.W.3d 423 (2002). *See also* Ark. R. Evid. 613(b) (2007). However, if the witness admits making the prior inconsistent statement, then extrinsic evidence of that statement is not admissible. *See id. See also Kennedy v. State*, 344 Ark. 433, 42 S.W.3d 407 (2001); *Ford v. State*, 296 Ark. 8, 753 S.W.2d 258 (1988).

In *Threadgill, supra*, we held the witness did not unequivocally admit that her prior statement was a lie. 347 Ark. at 991, 69 S.W.3d at 426-27. Instead, that witness testified that she did not remember making the statement, or, that if she made the statement it was a lie. *See id*. We held that her testimony left doubt as to whether she admitted that the earlier statement was a lie, as required by the case law interpreting Rule 613(b), and, thus, the circuit court did not abuse its discretion in admitting her previous statement for purposes of impeachment. *See id*.

Here, Jamie Kay admitted to making the prior inconsistent statements after listening to the recorded conversation and repeatedly said she had been lying during that phone conversation with M.S. However, Jamie Kay then stated the following on redirect, "I didn't ever believe the charges was [sic] true, because he's not that way, and I know that." The recorded statements directly contradict that assertion, and the circuit court allowed the statements into evidence so the jury could decide for themselves if Jamie Kay thought Winkle was "that way" or not.

While Winkle also alleges that the recorded conversation contained prejudicial statements and was admitted only to introduce prejudicial evidence to the jury, the circuit court specifically gave the jury a limited instruction after the redacted tape was played:

> Ladies and gentleman, evidence that a witness has previously made a statement that's inconsistent with her testimony at the trial may be considered by you for the purpose of judging the credibility of that witness, but may not be considered by you as evidence of the truth of the matter set forth in that statement.

> Further, I am instructing you to disregard the statements in the tape as to the other alleged crimes, wrongs, or acts of the defendant.

Given the specific facts of this case, we cannot say the circuit court abused its discretion by admitting the recorded phone conversation.

Affirmed.

IMBER, J., concurs.