2011 Ark. App. 575

**William PHILLIPS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–270.**

Court of Appeals of Arkansas.

Sept. 28, 2011.

William Owen James Jr., Little Rock, for appellant.

Eileen W. Harrison, Little Rock, for appellee.

CLIFF HOOFMAN, Judge.

Appellant William Phillips was convicted by a jury of second-degree murder and was sentenced to twenty years' imprisonment, with an additional eight years for the use of a firearm. On appeal, Phillips argues that there was insufficient evidence to show that he knowingly caused the death of the victim. We disagree and affirm the conviction.

At trial, the following evidence was presented by the State. The victim, John Baugh, Jr., and Phillips were acquaintances. John Baugh, Sr., the victim's father, testified that his son owned a car lot where vehicles had been vandalized on sev-

eral occasions over a two-month period and that they suspected Phillips was involved in the crimes. Baugh, Sr. testified that on the morning of November 1, 2009, he and his son decided to go to the car lot early in the morning to see if they could catch the vandal. At approximately 5:45 a.m., while Baugh, Jr. was getting coffee at a nearby restaurant, Baugh, Sr. stated that he saw a truck drive by the lot very slowly. After the truck turned around and came back by the lot, still driving slowly, Baugh, Sr. testified that he recognized the driver as Phillips. Baugh, Sr. called his son and told him that the vandal was there, and when his son returned, Baugh, Sr. stated that they saw Phillips make two more trips back and forth in front of the car lot. When the truck did not reappear, Baugh, Jr. returned to the restaurant, and his father testified that Phillips again started driving by the lot. According to Baugh, Sr., his son told him that he was going to catch Phillips and ask him why he was driving by the lot and staring at them that early in the morning. Baugh, Sr. remained on the phone with his son while Baugh, Jr. followed Phillips down Broadway Avenue and onto Riverside Drive, where Phillips stopped at the boat-launch area. Over the phone, Baugh, Sr. heard his son ask Phillips what he meant by going back and forth in front of the car lot and staring. There was no reply, and Baugh, Sr. testified that those were the last words he heard from his son before the phone went dead. He immediately got in his car and drove down to Riverside Drive, where he saw his son's vehicle on the left side of the road up against a tree, approximately two blocks away from the boat-launch area. He testified that his son was dead and slumped over the steering wheel, with the driver's side window broken. Baugh, Sr. stated that he could tell that his son had been shot, and he told a bystander to call 911.

John Wiesle testified that he witnessed Baugh, Jr.'s vehicle driving down Riverfront Drive and swerving. As the car passed him, Wiesle stated that the driver was slumped over in the seat and that he next saw the car swerve across the road and hit a tree. He thought the driver had been shot because the window was broken out. Wiesle testified that he stopped and called 911 at the request of Baugh, Sr., who was very upset.

Officer Mark Wright, with the North Little Rock Police Department, testified that he had contact with Baugh, Jr. on two occasions in September 2009, when Baugh, Jr. called concerning vandalism to his vehicles. Wright stated that Baugh, Jr. named Phillips as a suspect and that he went to Phillips's home and left his card when Phillips was not there. Wright testified that Phillips called him back several days later and stated that he had no idea why he was being named as the vandal. According to Wright, he told Phillips just to stay away from Baugh, Jr.

The next witness was Samuel Iverson, a retired police officer, who testified that he lived next door to Phillips and that Phillips was not a violent person to his knowledge. Iverson stated that he also knew Baugh, Jr. and that he knew him to be friendly with Phillips. Iverson testified that on the morning of November 1, 2009, Phillips called him and told him that he had shot Baugh, Jr. According to Iverson, Phillips told him that Baugh, Jr. had followed him down to the river, then approached him and attacked him with a pipe. Phillips told Iverson that he fired a shot at Baugh, Jr., but did not know if he hit him, so he fired again. Phillips told Iverson that he thought he fired three shots. Iverson then told Phillips to call the police.

Officer Paul Riley testified that he responded to the accident on November 1,

2009, at approximately 7:00 a.m. He stated that there were three witnesses present, including Baugh, Sr. After securing the crash scene, Riley then went to the scene of the shooting, which he stated was one-half of a mile away. He saw tire treads from two vehicles and found two shell casings near the treads, as well as broken glass. Riley stated that the ground was muddy because it had rained the previous night.

Detective Clinton O'Kelley testified that he processed the evidence from both crime scenes. From the crash scene, O'Kelley collected the victim's shirts and flannel jacket, a black cell phone, and a bullet fragment found at the bottom of the driver's side door inside the vehicle. From the scene of the shooting, O'Kelley collected three .32–caliber shell casings and glass fragments. O'Kelley further testified that when he and defense counsel examined the flannel jacket at the police station on a later date, a bullet core fell out of the jacket and was also sent to the crime lab. According to O'Kelley, there was evidence that four shots were fired at the scene, although only three shell casings were found.

Sergeant Brian Dedrick testified that he interviewed Phillips after Phillips called the police that morning and was taken to the police station. This interview was recorded, and the tape was played for the jury. According to Phillips's statement, he got up early on Sunday morning, November 1, 2009, and after he had gotten the newspaper and some gas, he drove by a drywall business to see if they had any aluminum studs stacked out front because he was wanting to enclose his patio. Phillips stated that he drove by the business, saw that the studs were there, and wrote down the phone number to call them later. He stated that he was afraid that he had gotten the number wrong, so he circled

around and drove back by the drywall business to double check. He admitted that Baugh, Jr.'s car lot was near the drywall place, but stated that he was not even thinking about the car lot at that time. Phillips stated that he and Baugh, Jr. had been friends and used to drink coffee together, but that he had not seen him in more than one month. Phillips was aware that Baugh, Jr. had named him as a suspect in the vandalism, but he denied being involved.

According to Phillips, after he left the drywall business, he drove down to the river to use the restroom and to look at the water level of the river. He stated that Baugh, Jr. then drove up beside him, got out of his vehicle, said that he was going to "knock his head off," and then physically attacked Phillips with a weapon in his hand that he described as a piece of black pipe or something similar. Phillips stated that the weapon hit and injured his left hand and that he stumbled backward and fell onto the ground. He then took his pistol out of his right pocket and fired at Baugh, Jr. from his position on the ground when he continued to come at him. In his statement, Phillips initially stated that he hit Baugh, Jr. in the arm on the first shot and in the chest on the second shot; however, he later stated that he did not think that he hit Baugh, Jr. with his first shot because there was no reaction to the shot and that his second shot may have hit Baugh, Jr. in the arm because Phillips saw him grab his arm after the shot. Phillips stated that Baugh, Jr. then got into his car and sped off. While he was rolling over on his side to get up off the ground, Phillips indicated that he accidentally fired a third shot, although he was not aiming at anything. Phillips stated that he drove straight home, changed his clothes because they were muddy from falling on the ground, and then called his neighbor and told him what happened.

Sergeant Dedrick testified that Phillips did not seem to know that Baugh, Jr. had died until he informed him during the interview and that Phillips appeared shocked at this fact. Dedrick took pictures of Phillips's left hand, which had a small abrasion, and these pictures [6]were introduced into evidence. Dedrick testified that there were many inconsistencies in Phillips's account of the events after repeated questioning, such as differences in where and when he shot the victim and different descriptions of Baugh Jr.'s alleged weapon. Phillips gave consent for police to search his house and car, and Dedrick stated that he found a scrap of paper with the name and phone number of the drywall business in Phillips's car.

Detective Dane Pederson testified that he searched Phillips's residence and that he found the Keltec .32–caliber handgun where Phillips had indicated it would be. Pederson stated that there was a bullet in the chamber and two bullets in the clip. He also found a bullet on the kitchen counter and in the bedroom. Pederson seized Phillips's clothes from earlier that morning and stated that there was a mud spot on the back of his pants and a few drops on the leg. The t-shirt did not appear to be wet or covered in mud, according to Pederson, and he stated that the majority of the clothing did not appear to be consistent with someone who fell down on his back and then rolled over to get up. He also testified that there was a smear of blood on the left leg of Phillips's pants, which was later found to be Phillips's and that would be consistent with someone wiping off blood from his hand.

Dr. Daniel Konzelman, the medical examiner in this case, testified that there were two gunshot wounds to the victim's left upper arm, as well as a gunshot wound to the left chest wall. There was also another scrape in the same area of the chest that Dr. Konzelman testified could have been a result of one of the shots to the arm or could have been a completely separate gunshot wound. Dr. Konzelman described the bullet trajectory of the first shot to the upper arm as being "left to right, back to front, and downward." This particular bullet [7]exited the inner arm. The other shot to the victim's left arm was just above the elbow, and the bullet jacket and bullet fragments were recovered from the wound. The trajectory of this bullet wound was "back to front, left to right, and upward." The gunshot wound to the left chest wall was caused by a bullet that went "left to right, front to back, and downward," and this bullet was lodged in the victim's spine. According to Dr. Konzelman, the injury to the victim's chest was the most life-threatening, and the injuries would have caused the victim's death in minutes, although the victim would have been able to drive a car for a short time. He also testified that a fourth bullet was found imbedded in the victim's jacket and that this bullet contained shards of glass, indicating that it struck the glass before hitting the victim's clothing. Dr. Konzelman testified that the downward trajectory of two of the bullets would be consistent with the victim sitting at the steering wheel of his car with a suspect standing up and shooting at him from outside the car. He further stated that he listed the cause of Baugh, Jr.'s death as homicide.

Jennifer Floyd, a firearm and tool-mark examiner with the State Crime Laboratory, testified that she examined Phillips's pistol and that it was her opinion that it could not be fired accidentally. She stated that her analysis of the shell casings and bullet fragments indicated that they were fired from Phillips's gun. Floyd also did gunshot-residue analysis on the victim's clothing and stated that the bullet hole in the shirt pocket indicated that the shot was fired from a distance of between three

and eighteen inches from the victim and that the shot in the upper arm was fired from a distance of between three and thirty-six inches. The other bullet holes were not able to be tested for distance comparisons, although Floyd testified that one of these bullet holes was much larger than the others, indicating that the bullet had hit an intermediary object, such as glass, causing it to tumble through the air before hitting the victim.

Following the State's case, Phillips moved for a directed verdict, arguing that there was insufficient evidence presented to show that he knowingly caused the death of Baugh, Jr. This motion was denied by the trial court. The defense then presented witnesses that testified as to Phillips's honest character and that corroborated his version of events. The motion for directed verdict was renewed by the defense at the close of all of the evidence and was again denied. Although Phillips was charged with first-degree murder, the jury convicted him of the lesser-included offense of second-degree murder, for which he received a sentence of twenty years' imprisonment, with an eight-year-sentence enhancement for the use of a firearm. Phillips now appeals from the verdict and challenges the sufficiency of the evidence supporting his conviction.

▮ A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007). On appeal from a denial of a motion for directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* In determining whether there is substantial evidence to support the verdict, this court reviews the evidence in the light most favorable to the State and considers only that evidence which supports the verdict. *Id.* Substantial evidence

is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* The fact that evidence is circumstantial does not render it insubstantial; however, when circumstantial evidence is relied upon, it must exclude every other reasonable hypothesis but the guilt of the accused. *Id.* The question of whether circumstantial evidence excludes other reasonable hypotheses is for the jury to decide. *Id.*

▮ Phillips argues that his conviction cannot be sustained because the State failed to prove that he knowingly caused the death of Baugh, Jr. According to Ark. Code Ann. § 5–10–103(a)(1) (Repl.1996), a person commits second-degree murder if he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life. A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct or the attendant circumstances exist, and he acts knowingly with respect to the result of his conduct when he is aware that it is practically certain that his conduct will cause the result. Ark.Code Ann. § 5–2–202(2)(A) & (B) (Repl.2006). Extreme indifference has been defined as deliberate conduct that culminates in the death of another person. *Wyles, supra.* Intent or state of mind is rarely capable of proof by direct evidence, but must usually be inferred from the circumstances surrounding the offense. *Id.* One is presumed to intend the natural and probable consequences of his actions. *Id.* The circumstances from which intent may be inferred include the type of weapon, the manner in which it was used, and the nature, extent, and location of the trauma suffered by the victim. *Id.* In addition, the jury is responsible for resolving questions of conflicting testimony and may choose to believe the State's ac-

count of the facts, rather than the defendant's. *Id.*

■ As support for his argument that there was insufficient evidence of his intent shown by the State, Phillips mainly recites the evidence supporting his version of the events: the victim initiated the altercation; he sustained an injury to his hand during the fight; there was mud on his clothing consistent with his story that he fell on the ground after being attacked by Baugh, Jr.; he did not pursue Baugh, Jr. after he drove away. However, the evidence is not reweighed on appeal, and only the evidence supporting the verdict is considered. *Id.*

■ A review of the evidence supporting the verdict in this case demonstrates that there is substantial evidence to show that Phillips knowingly committed second-degree murder. The victim sustained four gunshot wounds, including two shots to the left chest area, and he died as a result of a chest wound. While Phillips asserted that he only fired the gun to protect himself from the victim's attack with a weapon, he sustained only a small abrasion to his hand, and the alleged weapon used by the victim was never found at the crime scene or in the victim's car. Also, in contrast to Phillips's version of events, the driver's side window was smashed, and pieces of glass were embedded in a bullet found inside the victim's jacket; thus, there was evidence that this bullet was fired at the victim through the closed driver's side window. The medical examiner also testified that at least two of the shots were fired from a downward angle, which contradicted Phillips's story that he fired upward at Baugh, Jr. while lying on the ground. Instead, the medical examiner testified that the trajectories were consistent with the shooter standing outside the driver's side window and firing shots at the driver sitting at the wheel. The bullet that struck the victim's chest was also fired at a close range of three to eighteen inches, and the firearm and tool examiner testified that the pistol required six to seven pounds of pressure to pull the trigger and opined that it could not be fired accidentally.

From this evidence, the jury reasonably concluded that Phillips knowingly and with an extreme indifference to human life fired a deadly weapon at the victim multiple times and at close range. As the State asserts, Phillips is presumed to intend the natural and probable consequences of his actions, *Wyles, supra,* and the pattern of the gunshots, which were aimed at the victim's chest and upper-arm area, as well as the trajectory of the bullets show that Phillips acted deliberately in a manner that would naturally and probably culminate in the victim's death.

Although Phillips argues that he was only acting in self-defense, that he did not intend to cause the victim's death, that he did not believe that he had hit Baugh, Jr. with the gunshots, except for the second shot to his arm, and that he was surprised to learn later that the victim was fatally injured, the jury was free to disbelieve Phillips's version of events. *Wyles, supra.* A similar argument was rejected in *Johnson v. State,* 2010 Ark. App. 153, 375 S.W.3d 12, where the appellant contended that she fired the weapon either accidentally or in self-defense when she and the victim were arguing and that there was no evidence that she knowingly caused his death, where she only shot him once in the wrist and did not know that she had even hit the victim at all. This court held that the facts presented a credibility issue for the jury and that there was substantial evidence presented to support the jury's determination that she acted knowingly in causing the victim's death and that she was guilty of second-degree murder. *Id.* In the present case, there was also sub-

stantial evidence presented to support the jury's verdict that Phillips was guilty of second-degree murder, and we affirm.

Affirmed.

VAUGHT, C.J., and BROWN, J., agree.